| |
|---|
| USDC SDNY <br> DOCUMENT <br> ELECTRONICALLY FILED <br> DOC #: _____ <br> DATE FILED:  1/24/2025 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

JAMEL KENNEDY,

                       Defendant.

12 Cr. 863-9

**ORDER**

ANALISA TORRES, District Judge:

        The Government appeals from the Honorable Sarah L. Cave's January 21, 2025 order releasing Defendant, Jamel Kennedy, on bail subject to certain conditions, including home confinement, pending the Court's disposition of Kennedy's alleged violation of supervised release. *See* ECF No. 616.  The appeal was referred to the undersigned.  For the reasons stated below, Judge Cave's order is reversed.

## BACKGROUND

        By judgment dated August 11, 2014, Kennedy was convicted of conspiracy to distribute and possess with intent to distribute crack cocaine and was sentenced by the Honorable Loretta A. Preska to 120 months' imprisonment followed by 3 years of supervised release.  ECF No. 304.  Kennedy began his term of supervised release around January 14, 2022.  Gov't Br. at 1, ECF No. 619.

        Two-and-a-half years later, as Kennedy neared the end of his supervised release term, the U.S. Probation Department ("Probation") filed a violation report containing seven specifications, six of which allege that Kennedy violated the terms of his supervised release by committing state crimes during two incidents of domestic violence in May and July 2024.  *Id.* at 1–2.  The report alleges that Kennedy was arrested by the New York City Police Department ("NYPD") in May 2024, in connection with a "domestic violence dispute with his girlfriend" and was charged with multiple assault-related crimes.  Those charges were later dismissed.  The report also states that

Kennedy was arrested in July 2024 for assault- and harassment-related crimes, including "criminal obstruction of breathing," after he allegedly "punched [his girlfriend] multiple times with a closed fist about the face; pulled her hair; . . . applied pressure on her throat," and attempted to prevent her from seeking the aid of the police. Those charges, too, were later dismissed.

On July 17, 2024, Judge Preska issued a summons for Kennedy to appear on the specifications listed in the violation report. Gov't Br. at 2. Judge Preska arraigned Kennedy on the specifications on July 24, 2024. ECF Entry (7/24/2024). She emphasized that Kennedy was to have no contact with the victim and she modified the conditions of supervised release to include electronic monitoring with exclusion zones around the victim's residence. *Id.*; Gov't Br. at 2. By order dated December 3, 2024, Judge Preska scheduled an evidentiary hearing on the specifications for February 4, 2025. ECF No. 609.

On or about December 29, 2024, the victim reached out to the U.S. Attorney's Office seeking an order of protection against Kennedy. Gov't Br. at 2. On January 11, 2025, she reached out again, saying she was "done being scared." *Id.* She reported that Kennedy was sending her threatening text messages and, on January 11, had come to her workplace and threatened her with a scalpel. *Id.* at 2–3.

NYPD officers took the victim's statement in connection with the January 11 incident, filed a complaint, and arranged for Kennedy to surrender at an NYPD station. *Id.* at 3. On January 15, Kennedy self-surrendered to the NYPD. *Id.* at 4. That same day, the victim recanted her testimony, saying that Kennedy did not threaten her with a scalpel and did not send her the threatening text messages. *Id.* at 4, 6; *see also* Def. Br. at 2, ECF No. 622. GPS monitoring corroborates, however, that Kennedy was in the vicinity of the victim's workplace on January 11. Gov't Br. at 6. Additionally, pursuant to a judicially authorized search warrant, the

2

Government retrieved from Kennedy's cellphone more than 2,000 pages of text messages between Kennedy and the victim in which Kennedy repeatedly threatened to kill and harm the victim between December 20, 2024, and January 11, 2025.  Gov't Br. Exs. B, C.[1]  The messages contain myriad threats, including "ima kill u and ur son," Ex. C. at 346; "Ima make u suffer," *id* at 805; "ima cry in jail so what but know this ima kill u," *id.* at 965; "I should of kill u upstate bitch," *id.* at 1170; "I just make plan to kill u upstate know that bitch" and "U already told the feds on me again," *id.* at 1338; "Ima kill you in front your kids," *id.* at 2005; "It gona be fun killing u tomorrow," *id.* at 2241; "Ima really gona off u tomorrow asap," *id.* at 2253; "Ima maksure ur daughter suffer," *id.* at 2256; "U dead stay dead forever tomorrow," *id.* at 2257; and many other similar messages, culminating in a series of specific threats to kill the victim on or around January 11.

On January 16, Probation issued an amended violation report containing three new specifications related to the January 11 incident.  Gov't Br. at 4.  Probation sought a warrant for Kennedy's arrest, which Judge Preska signed on January 17.  *Id.*  On January 21, Kennedy self-surrendered to the U.S. Marshals.  *Id.*  Judge Preska set a conference for January 28 and referred Kennedy's initial appearance on the amended violation report to Judge Cave.  *Id.*

At his initial appearance on January 21, Kennedy moved for release pending disposition of the specifications.  Tr. at 7:1–5, ECF No. 619-1.  After hearing arguments from both sides, Judge Cave acknowledged that the issue was "very close" and ordered that Kennedy be released to home confinement with continued electronic monitoring.  *Id.* at 30:4, 30:13–15.  Judge Cave's order permitted Kennedy to leave his home solely for medical emergencies or to work his job as a delivery driver on Wednesdays, Thursdays, and Fridays.  *Id.* at 30:15–18; *see id.* at 14:2–3.  The order further directed Kennedy to meet with his probation officer six days after release and

---

[1] The Government's request to file Exhibits B and C to its bail appeal under seal, *see* Gov't Br. at 4 n.2, is granted.

to have a check-in call with Judge Cave two days after the date of her order. *See id.* at 31:3–12. Judge Cave ordered Kennedy to resume anger management counseling, to surrender his phone to law enforcement, and to "not contact the victim," "[not] call her," "[not] text her," "[not] email her," "[not] drive by her house," "[not] go to her work," and "[not] go anywhere near her." *Id.* at 30:18–24, 31:13–22.

At the request of the Government, Judge Cave stayed her order until 4:30 p.m. on January 22. ECF No. 616. By order dated January 22, the undersigned directed that the temporary stay be continued pending the Court's decision on the Government's bail appeal. ECF No. 618.

## DISCUSSION

I.  Legal Standard

A district court reviews *de novo* a magistrate judge's decision to release or detain a defendant. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Jones*, 566 F. Supp. 2d 288, 289–90 (S.D.N.Y. 2008). In contrast to ordinary pretrial detention, in which the Government bears the burden to establish the need for detention, 18 U.S.C. § 3143(a)(1) and Federal Rule of Criminal Procedure 32.1(a)(6) set forth a rebuttable presumption of detention for a defendant who is presented on an alleged violation of supervised release. Such a defendant bears the burden to establish, by "clear and convincing evidence," that he "will not flee or pose a danger to any other person or to the community." Fed. R. Crim. P. 32.1(a)(6).

In determining whether a defendant has satisfied his burden, the Court considers (1) the nature and circumstances of the specifications; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of any danger the defendant poses to anyone in the community. *See* 18 U.S.C. § 3142(g).

II. <u>Analysis</u>

Having considered the Government's appeal, Kennedy's opposition, and Judge Cave's bail decision, and the arguments made by counsel at the bail hearing before Judge Cave, the Court finds that Kennedy has not met his burden to show by clear and convincing evidence that he does not pose a danger to anyone in the community.

First, the nature of the conduct alleged in the specifications is serious and weighs against granting release. Any proven violation of supervised release amounts to a betrayal of the Court's trust, but the criminal conduct here is especially serious because nine of the ten specifications involve physical acts of violence and harassing and threatening behavior against the same person in a domestic setting.

Second, the weight of the evidence against Kennedy is not insubstantial. Although the Government reports that the criminal charges filed in connection with the May and July 2024 incidents were later dismissed, the Government also represents that photos taken by NYPD officers after the alleged incidents corroborate the victim's physical injuries and, after one of the incidents, Kennedy was found with the victim's phone shortly after she alleged that he had stolen it from her during a physical altercation. Gov't Br. at 1–2, 5–6. That the victim recanted her statements concerning the January 11 incident after Kennedy was arrested does not alter the fact that her statements are independently corroborated by GPS monitoring and the text messages sent from Kennedy's phone.

Third, Kennedy's history and characteristics weigh against release. Kennedy emphasizes that he self-surrendered to the NYPD after the January 11 incident and did so again to the U.S. Marshals in connection with the amended violation report. Def. Br. at 2. Although his self-surrenders could provide assurance that he would appear for his violation of supervised release evidentiary hearing if he were released, they prove little as to whether Kennedy poses a

5

danger to others while on bail. Indeed, the Government has presented a mountain of direct and unrebutted evidence—more than 2,000 pages of text messages from Kennedy to the victim, taken from Kennedy's phone—demonstrating a flagrant disregard for Judge Preska's July 2024 order to not have any contact with the victim. Such a blatant violation of the Court's orders does not weigh in favor of release.

Fourth, the danger that Kennedy appears to pose to the victim and others is serious. As reflected in his text messages, Kennedy has repeatedly threatened indiscriminate violence against the victim, her children, and others. He has also, allegedly, taken concrete steps to act on his threats, going to the victim's place of work and threatening her with a scalpel. According to police reports, Kennedy has taken actions in the past that were designed to prevent the victim from contacting law enforcement. And, his text messages corroborate that he has threatened the victim precisely *because* she seeks the aid of the authorities. These actions, taken together with Kennedy's open and flagrant disregard of this Court's prior orders, leave little doubt that no order of the Court or electronic monitoring could assure the safety of the victim or others in the community at this time.

Weighing the above factors and considering all the evidence, the Court finds that Kennedy has not met his burden to overcome the presumption of detention by clear and convincing evidence.

## CONCLUSION

For the foregoing reasons, the bail order, ECF No. 616, is REVERSED. Kennedy shall remain detained pending the disposition of the specifications in the amended violation report.

SO ORDERED.

Dated: January 17, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge

6